# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **James M**[1] | Case No. 6:18-cv-2038-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **ANDREW M. SAUL,** Commissioner of Social Security, | |
| Defendant. | |

Mark A. Manning, HARDER, WELLS, BARON & MANNING, PC, 474 Willamette Street, Eugene, OR 97401. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; L. Jamala Edwards, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

James M. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of

the Social Security Administration ("Commissioner") denying his applications for Supplemental

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Security Income ("SSI") and Disability Insurance Benefits ("DIB"). For the reasons discussed below, the Commissioner's decision is reversed and remanded for further proceedings.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground on which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

## A.  Plaintiff's Application

Plaintiff protectively filed applications for DIB and SSI on July 13, 2015, alleging disability beginning on April 10, 2015. AR 207, 209. On September 9, 2015, Plaintiff amended his applications and changed his alleged onset date to October 17, 2014. AR 215. Plaintiff was born on August 6, 1964 and was 50 years old on his amended alleged disability onset date. Plaintiff has a GED and has attended limited community college classes but has received no college degree or credential. AR 31. Plaintiff alleged disability based on lumbar disc disorder with myelopathy, joint bone spurs, impingement syndrome in his right shoulder, carpal tunnel syndrome, Barrett's esophagus, diverticulitis, and trigger finger. AR 73-74, 230. The Commissioner denied Plaintiff's applications both initially and upon reconsideration; thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 109-12, 157-58. An administrative hearing took place on October 24, 2017. AR 27. On January 4, 2018, the ALJ issued a decision that Plaintiff was not disabled under the Social Security Act for both DIB and SSI. AR 11-21. On January 23, 2018, Plaintiff requested a review of the ALJ's decision by the Appeals Council, and on September 25, 2018, the Appeals Council denied Plaintiff's request for review and the ALJ's decision became final. AR 1-3. Plaintiff now seeks review of that decision.

## B.  Sequential Analysis

A claimant is disabled if he or she cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.    Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.    Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-

(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant can perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

**C. The ALJ's Decision**

The ALJ found that for Plaintiff's DIB claim, he met the insured status requirements of the Social Security Act through June 30, 2019. AR 13. The ALJ then applied the sequential analysis process. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity after the alleged onset date, October 17, 2014. *Id.* At step two, the ALJ found that Plaintiff has the following severe impairments: lumbar degenerative disc and joint disease, osteoarthritis of the shoulders, and obesity. *Id.* The ALJ noted the existence of other impairments in the record that he categorized as non-severe.[2] AR 14. Kamara Dodd, FNP, stated that if Plaintiff's trigger finger was not treated medically, he would be unable to continue to work or work safely. *Id.* The ALJ gave "limited weight" to Kamara Dodd's opinion, "because she provides no specific functional limitations, and her opinion is limited specifically to the claimant's ability to perform his past work in the construction industry." *Id.* Kamara Dodd's opinion did not address Plaintiff's general ability to perform in the workplace. *Id.*

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets the severity of one of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *Id.* The ALJ considered Listing 1.02, major joint disfunction, and Listing 1.04, disorders of the spine. *Id.* The ALJ found that Plaintiff's impairments do not satisfy the requirements for either listing. *Id.*

Continuing step three, the ALJ found that Plaintiff had an RFC as follows:

> [T]he claimant has the residual functional capacity to perform a
> reduced range of light work. He can lift, carry, push, and pull 20
> pounds occasionally and 10 pounds frequently. He can stand or
> walk for about 6 hours in an 8-hour workday, and he can sit for
> about 6 hours in an 8-hour workday. He can frequently climb

---

[2] The ALJ considered Plaintiff's history of carpal tunnel syndrome and trigger finger and determined they were non-severe. AR 14.

> ramps, and stairs, and he can occasionally climb ladders, ropes,
> and scaffolds. He can occasionally crouch and frequently stoop. He
> can occasionally reach overhead bilaterally.

*Id.*

In reaching this conclusion, the ALJ considered Plaintiff's lumbar degenerative disc and joint disease, osteoarthritis of the shoulders, shoulder impairments, and obesity. AR 15-19. The ALJ also considered written medical evidence from Plaintiff's treating surgeon Aleksandar Curcin, M.D. ("Dr. Curcin") and medical opinion evidence from the state agency medical physicians Neal E. Berner, M.D. and Thomas W. Davenport, M.D. (collectively, "state agency medical consultants"). Finally, although the ALJ cited information from the records of treating doctor Wesley Johnson, M.D. ("Dr. Johnson"), the ALJ's decision did not discuss Dr. Johnson's medical records in any detail or mention him by name. AR 18. The ALJ found Plaintiff's testimony about the intensity, persistence, and limiting effects of his symptoms inconsistent with his longitudinal medical records, objective findings, and activities of daily living. AR 15, 18. The ALJ therefore formulated Plaintiff's RFC consistent with these findings.

At step four, based on Plaintiff's RFC and the recommendation of an impartial vocational expert ("VE"), the ALJ determined that Plaintiff could not perform any past relevant work. AR 19. Plaintiff's past relevant work included work as a house mover, construction worker, sales attendant for building materials, and an automobile service attendant. *Id.* The ALJ noted that all past relevant work exceeds the lifting, carrying, standing, or walking limitations in Plaintiff's RFC. *Id.* At step five, the ALJ consulted the VE, who testified that there are other jobs existing in significant numbers in the national economy that Plaintiff could perform. AR 20. These include gate guard, counter clerk, and storage facility rental clerk. *Id.* Consequently, the ALJ

found Plaintiff "not disabled" as defined in the Social Security Act from the alleged onset date through the date of the ALJ's decision. AR 21.

## DISCUSSION

Plaintiff seeks review of the determination that he was not disabled. He argues that the ALJ erred by: (A) improperly discounting Plaintiff's subjective symptom testimony; (B) improperly discrediting the opinions of treating surgeon Dr. Curcin and treating doctor Dr. Johnson; and (C) assessing a flawed RFC unsupported by substantial evidence and concluding at step five that Plaintiff can perform other work in the national economy. Plaintiff further asserts that his subjective symptom testimony and the opinions of Dr. Curcin and Dr. Johnson should be fully credited as true.

### A. Plaintiff's Subjective Symptom Testimony

#### 1. Applicable Law

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46). Finally, if the ALJ's credibility finding is specific, clear, and convincing, and supported by substantial evidence in the record, the court may not engage in second-guessing. *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002); *see also Kirkruff v. Berryhill*, 2017 WL 1173910, at *2 (D. Or. March 28, 2017).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and

other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's credibility decision may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 446 F.3d 880, 883 (9th Cir. 2006).

### 2. Analysis

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of Plaintiff's alleged symptoms, but not to the extent claimed by Plaintiff. AR 18. Thus, the second step of the analysis required the ALJ to offer clear and convincing reasons to reject Plaintiff's testimony about the severity of his symptoms. The ALJ discredited Plaintiff's symptom testimony because: (a) his claimed limitations are inconsistent with his longitudinal medical records; (b) his course of treatment and effective use of medication do not support Plaintiff's alleged limitations; (c) his activities of daily living are inconsistent with his alleged limitations; and (d) his limitations are not supported by objective medical evidence.

### a. Inconsistencies with Longitudinal Medical Records

Plaintiff first argues that the ALJ erred by rejecting his subjective symptom testimony because of inconsistencies with Plaintiff's longitudinal medical records. One such purported

inconsistency is with Plaintiff's alleged onset date, October 17, 2014. During the hearing, the

ALJ recognized that Plaintiff originally alleged disability starting on April 10, 2015, and later

amended the date to October 17, 2014 to cover his shoulder injuries. AR 40. In his decision, the

ALJ noted that although Plaintiff experienced a left shoulder injury while at work in September

2014, he decided to forgo surgery and sought minimal treatment for this condition despite

receiving a worker's compensation settlement. AR 15. The ALJ observed that Plaintiff rated his

left shoulder pain as a two on a ten-point scale. AR 16. The ALJ also considered Plaintiff's long

history of right shoulder pain. The ALJ recognized that Plaintiff has sought little to no medical

treatment for either of his shoulders since late 2014 and that Plaintiff continued to work despite

his shoulder conditions. AR 15-16. The ALJ found that these inconsistencies undermined

Plaintiff's allegations about the nature and extent of his limitations starting on October 17, 2014.

*Id.* The ALJ also stated that although Plaintiff's hearing testimony supports a long history of

back problems, Plaintiff's medical records make "no mention" of back pain until April 2015.

### i. Plaintiff's shoulder pain symptom testimony

Plaintiff asserts that his longitudinal medical records fit his alleged onset date, and thus

the ALJ erred in discounting his subjective symptom testimony. Plaintiff argues that the ALJ

improperly discredited his allegations of shoulder pain because he could not afford shoulder

surgery. Plaintiff testified that he used proceeds from his workers' compensation settlement to

pay his medical bills, attorney's fees, and the State took a portion to pay back Plaintiff's owed

child support payments. Thus, Plaintiff argues it was improper for the ALJ to consider his

inability to afford and obtain treatment to discredit his testimony.

Although an "unexplained, or inadequately explained, failure to seek treatment," absent a

good reason is sufficient for an ALJ to discredit subjective symptom testimony, *Fair v.*

*Bowen*, 885 F.2d 597, 603 (9th Cir. 1989), "benefits may not be denied to a disabled claimant

because of a failure to obtain treatment that the claimant cannot afford." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *see also Orn*, 495 F.3d at 638 (holding that a claimant's subjective symptom testimony may not be discredited for failure to seek treatment the claimant could not afford absent reason to disbelieve the assertion that the treatment is unaffordable). Thus, the ALJ erred in relying on Plaintiff's failure to obtain shoulder surgery as a reason to discredit his subjective symptom testimony.

The ALJ, however, did not solely rely on Plaintiff's failure to receive surgery to discount his shoulder pain testimony. The ALJ also relied on Plaintiff rating his left shoulder pain as a two out of ten, Plaintiff continuing to work with his shoulder injuries, and Plaintiff failing to receive any shoulder treatment since late 2014 as reasons to discount his testimony. These are clear and convincing reasons to discount Plaintiff's allegations of disabling shoulder pain beginning on October 17, 2017. Because the Court finds that the ALJ provided these clear and convincing reasons to assign Plaintiff's shoulder pain testimony less weight, the Court need not address the other reasons proffered by the ALJ to discount Plaintiff's shoulder pain subjective symptom testimony.

## ii. Plaintiff's back and leg pain symptom testimony

The ALJ also considered inconsistencies in Plaintiff's long history of back and leg pain. The ALJ observed that Plaintiff's longitudinal medical records "make no mention of back pain until April 2015," and show no significant exacerbation of those symptoms until April 2015—six months after Plaintiff's alleged onset date. AR 16. The ALJ found that these inconsistencies undermined Plaintiff's allegations about the nature and extent of his limitations starting on October 17, 2014. *Id.*

The ALJ did not provide clear and convincing reasons supported by substantial evidence to discount Plaintiff's subjective testimony regarding his back and leg symptoms. As an initial

matter, the record includes mentions of back pain predating April 2015. *See, e.g.*, AR 399 (December 10, 2013, noting "active problem" of lower back pain), 394 (January 3, 2014, noting "active problem" of lower back pain), 391 (June 24, 2014, noting "active problem" of lower back pain), 523 (April 11, 2015, ER visit for pain in buttock region shooting down the leg, noting "past surgical history" of "back surgery in 1997"), 521 (April 13, 2015, ER visit for low back pain radiating down the leg, noting medical history of lumbar disk disease, that Plaintiff "had surgery at L3-4 which left him with an absent patellar reflex on the right side," and the surgery was "years ago").

Additionally, in his reply brief, Plaintiff emphasizes that his back and leg related issues are the focus of his disability claims. Plaintiff, however, amended his alleged disability onset date from April 10, 2015 to October 17, 2014 to account for his shoulder injuries. Thus, it is improper for the ALJ to discount Plaintiff's subjective symptom testimony about his back and leg pain because he did not seek treatment in October 2014 when Plaintiff injured his shoulders. Plaintiff alleges his shoulder problems worsened in October 2014, and that his back and leg pain worsened in April 2015. Plaintiff's allegations about the onset of his back and leg pain match his longitudinal medical records. Thus, the ALJ erred in using Plaintiff's alleged onset date for his shoulder injuries to discredit his testimony about his back and leg pain. Moreover, the ALJ found Plaintiff not disabled through the date of the ALJ's opinion, when the record includes significant evidence relating to multiple back surgeries, with cycles of improvement following deterioration after each surgery. *See Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) ("At most this evidence demonstrates for a brief period of time, Lester experienced some relief from his back pain. In evaluating whether the claimant satisfies the disability criteria, the Commission must evaluate 'ability to work on a sustained basis.' 20 C.F.R. Section 404.1512(a). Occasional,

symptom-free periods—and even sporadic ability to work—are not inconsistent with disability."). The ALJ did not appear to consider whether Plaintiff was disabled at any later onset date, such as after deterioration post-surgery from the most recent surgery, and whether Plaintiff's subjective testimony was consistent with such disability.

### b. Course of Treatment and Medication Use

The ALJ found Plaintiff's course of treatment and successful use of medication were inconsistent with his claimed limitations. Routine, conservative treatment can be sufficient to discount a claimant's subjective testimony regarding the limitations caused by an impairment. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Not seeking an "aggressive treatment program" permits the inference that symptoms were not "as all-disabling" as the claimant reported. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. § 416.929(c)(3). If, however, the claimant has a good reason for not seeking more aggressive treatment, conservative treatment is not a proper basis for rejecting the claimant's subjective symptoms. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

During the relevant time period, Plaintiff had two surgeries on his back, and the record shows that a third surgery has been recommended but Plaintiff has been told that it will not be covered by his insurance. Having two surgeries is not conservative treatment. Forgoing a third surgery because it will not be covered by insurance and is unaffordable is a good reason for not seeking more aggressive treatment. Plaintiff's course of treatment is not a clear and convincing reason to discount his symptom testimony.

Regarding use of medication, the ALJ stated that medication was relatively effective in controlling Plaintiff's symptoms, Plaintiff went a long period without taking any medication, and

for a period Plaintiff was refilling prescriptions without change. AR 18. As the ALJ noted in his

opinion, however, Plaintiff's insurance stopped covering his medication and he stopped taking

the medication because he was financially unable to purchase the medication on his own. AR 17.

Failure to obtain treatment because a plaintiff cannot afford the treatment is not a valid reason to

discount subjective testimony. *Orn*, 495 F.3d at 638. Plaintiff also made every effort to quickly

titrate off oxycodone and other opioids as quickly as possible because of Plaintiff's history of

addiction. This is a "good reason" for Plaintiff's conservative approach to his medication regime.

*Carmickle*, 533 F.3d at 1162 (rejecting an ALJ's adverse credibility finding because of

conservative care where the claimant's insurance did not cover the only medication that

"provided significant relief without addiction potential or intolerable side effects"). Thus, the fact

that Plaintiff went a period of time without medication is not a valid reason to discount his

testimony.

The ALJ also erred in discounting Plaintiff's symptom testimony by stating that

medication has been effective in controlling Plaintiff's back and leg pain. "[I]t is error for an

ALJ to pick out a few isolated instances of improvement over a period of months or years and to

treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759

F.3d 995, 1017 (9th Cir. 2014); *see also Lester*, 81 F.3d at 833 ("Occasional, symptom-free

periods—and even sporadic ability to work—are not inconsistent with disability."). Although

Plaintiff reported an amelioration of back pain with medication and physical therapy, these

instances immediately followed Plaintiff's two surgeries. On each occasion, Plaintiff's back

condition deteriorated, causing a reoccurrence of back and leg pain. After Plaintiff's alleged

onset date, the 11 months following his left-sided foraminotomy in April 2016 was the longest

span of time he went with minimal back pain. AR 601-03, 611-20. By March 2017, Plaintiff

again reported increasing radiating pain in his left buttock. Now, Plaintiff's treating and examining doctor, Dr. Johnson, reported that a fusion would likely be the only option to relieve Plaintiff's chronic back pain. The objective medical evidence shows that medication does not adequately manage Plaintiff's back pain.

Finally, the fact that during "long periods" Plaintiffs medications went unchanged is not a clear and convincing reason to discount his subjective symptom testimony. As discussed, Plaintiff had two back surgeries during the three years and three months between the alleged disability onset date and the ALJ's opinion, with a third surgery recommended that Plaintiff could not afford, and he attempted to use the most conservative medication due to his history of addiction.

### c. Activities of Daily Living

The ALJ also determined that Plaintiff's testimony about his activity level was inconsistent with his alleged limitations. The ALJ stated that "despite [Plaintiff's] allegations that he is disabled and unable to work, he independently maintains his personal care, prepares simple meals, performs chores, drives, shops, manages his finances, and helps care for his pets." AR 18. Plaintiff also engaged in some painting and light remodeling of his home in January 2015. *Id.* Finally, the ALJ noted that Plaintiff spends most of his time "watching television, walking his dog, and socializing with others." *Id.*

The ALJ did not inquire into Plaintiff's activities of daily living during the hearing. Plaintiff reported that he cares for his dog with help from his girlfriend, shops for groceries one to three times per month, struggles to stand over the sink to shave and clean himself after a bowel movement, and walks for ten to twenty minutes before having to rest for a few minutes. AR 256-263. Additionally, although Plaintiff reported that he tries to spend time with friends, he "cannot make it to a lot of social activities because of [his] back pain" and cannot sit to drive for

long distances because of his back. AR 261. Plaintiff has also stated that he could not concentrate on work despite the pain or engage in similar activities for long periods of time given the extent of his pain.

Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn*, 495 F.3d at 639. For daily activities to discount subjective symptom testimony, the activities need not be equivalent to full-time work; it is sufficient that the plaintiff's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. A plaintiff, however, need not be utterly incapacitated to receive disability benefits, and completing certain routine activities is insufficient to discount subjective symptom testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled.") (quoting *Fair v. Bowen*, 885 F.2d at 603); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled."); *Reddick*, 157 F.3d at 722 (requiring the level of activity be inconsistent with the plaintiff's claimed limitations to be relevant to his or her credibility and noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."). Moreover, particularly with certain conditions, cycles of improvement may be a common occurrence, and it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding that a plaintiff can work. *See Garrison*, 759 F.3d at 1017.

Plaintiff's activity level does not contradict his alleged impairments. His ability to walk his dog for short distances, grocery shop a few times per month, watch television, and perform similar activities are the type of activities that the Ninth Circuit identified in *Vertigan* as insufficient to discount symptom testimony. 260 F.3d at 1050. Although Plaintiff reportedly engaged in some painting and light remodeling of his home in January 2015, the ALJ did not explore the extent of this activity during the hearing. Additionally, this activity occurred before Plaintiff's back pain worsened in April 2015 and before both of Plaintiff's back surgeries. As a result, the ALJ did not provide specific, clear, and convincing reasons to discount Plaintiff's subjective symptom testimony because of his activities of daily living.

### d. Objective Medical Evidence

The ALJ found that "the medical evidence of record does not contain objective findings that would reasonably support the degree of limitation the claimant alleges." An ALJ may consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, reject subjective pain testimony solely because it was not fully corroborated by objective medical evidence. *Robbins*, 466 F.3d at 883; *see also* 20 C.F.R. § 404.1529(c)(2) (noting that the Commissioner will not "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements"). Because the Court has found the other reasons the ALJ provided not to be clear and convincing, even if the objective medical evidence did not support Plaintiff's alleged limitations, the ALJ may not solely rely on this reason to discount Plaintiff's subjective testimony.

### 3. Harmless Error

The ALJ offered clear and convincing reasons supported by substantial evidence in the record to discount Plaintiff's subjective testimony regarding the limitations caused by his shoulder pain. The ALJ, however, did not offer clear and convincing reasons for discrediting Plaintiff's back and leg pain subjective symptom testimony, and thus erred. An error is harmless if it is "inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115; *see also Robbins*, 466 F.3d at 885 (noting that an error is harmless if it is "clear from the record the error was inconsequential to the ultimate non-disability determination"). A court should not automatically reverse on account of error, but should make a determination of prejudice. *Ludwig v. Astrue*, 681 F.3d at 1054. Plaintiff testified that he could only walk for ten to twenty minutes before needing to rest, that he was having trouble standing over the sink to shave and cleaning himself after a bowel movement, and that he could only lift 10 pounds occasionally. AR 59-60, 256-263. Plaintiff also testified that he could not sit and drive for long distances because of his back and leg pain. AR 261. Plaintiff's RFC, however, concluded that he could stand or walk for about 6 hours in an 8-hour workday, he can sit for about 6 hours in an 8-hour workday, and that he can lift and carry 20 pounds occasionally and 10 pounds frequently. AR 19. Because Plaintiff has identified limitations that he testified about that were not incorporated into the RFC, the ALJ's rejecting Plaintiff's testimony was not harmless.

## B. Medical Opinion Evidence

### 1. Applicable Law

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle*, 533 F.3d at 1164. The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. *Garrison*, 759 F.3d at 1012. Generally, "a treating physician's

opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan*, 246 F.3d at 1202. If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Orn*, 495 F.3d at 631. As with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester*, 81 F.3d at 830. An ALJ may reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995).

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or that the opinion is brief, conclusory, and inadequately supported by clinical findings. *Bray*, 554

F.3d at 1228; *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d

at 1042-43. An ALJ errs by rejecting or assigning minimal weight to a medical opinion "while

doing nothing more than ignoring it, asserting without explanation that another medical opinion

is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive

basis" for the ALJ's conclusion. *Garrison¸* 759 F.3d at 1013; *see also Smolen*, 80 F.3d at 1286

(noting that an ALJ effectively rejects an opinion when he or she ignores it).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and

thorough summary of the facts and conflicting clinical evidence, stating his interpretation

thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick*, 157 F.3d at 725). In

other words, "[t]he ALJ must do more than offer his conclusions. He must set forth his own

interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d

at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). "[T]he opinion of a non-

examining medical advisor cannot by itself constitute substantial evidence that justifies the

rejection of the opinion of an examining or treating physician." *Morgan v. Comm'r of Soc. Sec.

Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citations omitted); *but see id.* at 600 (opinions of

non-treating or nonexamining physicians may serve as substantial evidence when the opinions

are consistent with independent clinical findings or other evidence in the record).

## 2. Analysis

Plaintiff contends that the ALJ did not provide a sufficient explanation supported by

substantial evidence to reject the medical opinions of treating surgeon Dr. Curcin and treating

physician Dr. Johnson. Plaintiff also asserts that the ALJ improperly assigned controlling weight

to the medical opinions of the reviewing state agency examiners, Drs. Neal E. Berner and

Thomas W. Davenport, instead of the medical opinions of Drs. Curcin and Johnson.

### a.  Opinion Evidence of Dr. Aleksandar Curcin

Plaintiff claims that the ALJ erred by giving limited weight to treating surgeon

Dr. Curcin's medical opinion. The ALJ discussed in his opinion two of Plaintiff's post-operation

visits to Dr. Curcin. AR 18. The ALJ noted that in September 2015, Dr. Curcin "indicated that

[Plaintiff] could return to regular activities within four weeks." AR 18, 552. Similarly, in

May 2016, Dr. Curcin "advised the [Plaintiff] to avoid strenuous activities and heavy manual

labor for four to five weeks." AR 18, 565. The ALJ gave limited weight to these opinions

because they "[were] of limited duration and were issued during acute periods shortly following

the [Plaintiff's] lumbar surgeries." AR 18. The ALJ stated that Plaintiff's longitudinal medical

records show Plaintiff has long-term functional limitations, and that he considered those longer-

term limitations in the RFC. *Id.*

Plaintiff contends that the ALJ failed to consider and explain the weight he afforded to

every medical opinion in the record and did not evaluate Dr. Curcin's medical opinions with the

proper factors. Plaintiff argues that the ALJ committed reversible error in not assessing

Dr. Curcin's opinion according to these factors: the amount of relevant evidence that supports

the opinion, the quality of the doctor's explanation, the consistency between the opinion and the

medical record as a whole, and the doctor's familiarity with the record as a whole. 20 C.F.R.

§ 404.1527(c).

The Commissioner responds that the ALJ adequately discussed the medical evidence and

gave specific and legitimate reasons for the weight given. The Commissioner also asserts that

Plaintiff failed to establish error with the ALJ's medical analysis because Dr. Curcin's opinions

fit the conclusion that Plaintiff is not disabled or has the RFC for light work.

The party claiming error has the burden "to demonstrate not only the error, but also that it

affected his 'substantial rights,' which is to say, not merely his procedural rights." *Ludwig*, 681

F.3d at 1054. "Reversal on account of error is not automatic, but requires a determination of prejudice." *Id.* To satisfy this burden, Plaintiff must identify that there is a substantial likelihood of prejudice that results from giving Dr. Curcin's opinions limited weight. Plaintiff identified no specific limitations that Dr. Curcin found that the ALJ excluded from his opinion or the RFC. Plaintiff also did not identify any prejudice resulting from affording Dr. Curcin's opinions less weight. Dr. Curcin's medical opinions of Plaintiff's functionality only covered a limited time span following Plaintiff's surgeries. Even if the ALJ gave these opinions more weight, it is unclear how Dr. Curcin's medical opinions would bear on Plaintiff's RFC or ultimate disability determination. Thus, Plaintiff has not carried his burden in showing that there is a substantial likelihood of prejudice resulting from the ALJ's alleged error.

### b.  Opinion Evidence of Wesley Johnson, M.D.

Plaintiff also contends that the ALJ failed to identify clear and convincing or specific and legitimate reasons supported by substantial evidence to discredit the opinion of treating physician Dr. Johnson. Plaintiff argues that the ALJ failed to mention Dr. Johnson by name in his opinion or discuss Dr. Johnson's medical opinion. Thus, asserts Plaintiff, the ALJ erred in rejecting or assigning minimal weight to Dr. Johnson's medical opinion while "doing nothing more than ignoring it [and] asserting without explanation that another medical opinion is more persuasive." *Garrison*, 759 F.3d at 1012-13.

The Commissioner responds that although the ALJ did not address Dr. Johnson by name, the ALJ cited Dr. Johnson's records in his decision to show Plaintiff was functionally active. The Commissioner also argues that the ALJ need not address all evidence presented. The Commissioner states that even if the ALJ erred, the ALJ's failure to address Dr. Johnson's opinion is at most a harmless error. The Commissioner argues that it is harmless error because

Dr. Johnson's treatment notes do not provide any assessments of Plaintiff's functional abilities or other grounds to change the ALJ's opinion.

"Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs." *Id.* at 1012; *see also Smolen*, 80 F.3d at 1286 (stating that it is an error to ignore an examining physician's medical opinion without providing reasons for doing so and that an ALJ effectively rejects an opinion when he ignores it). Far from offering specific and legitimate reasons for rejecting or assigning less weight to Dr. Johnson's opinion, the ALJ failed to discuss Dr. Johnson's medical opinion in any detail. Although the Commissioner argues that the ALJ's error is at most harmless, the Court disagrees. Especially when a claimant's condition is progressively deteriorating, the most recent medical report is the most probative. *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986) (noting the "progressive nature of degenerative disc disease" and stating that "[w]here a claimant's condition is progressively deteriorating, the most recent medical report is the most probative"); *see also Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001) ("A treating physician's most recent medical reports are highly probative."). Thus, because Dr. Johnson is the most recent physician to examine and treat Plaintiff, his recent medical records are highly probative. The ALJ, however, ignored much of that most recent information.

Similar to *Young*, Plaintiff's treating and examining doctors diagnosed him with degenerative disc disease, a progressively worsening condition. As evidenced by his repeated back surgeries, Plaintiff's back condition is deteriorating. Dr. Johnson reviewed Plaintiff's prior records, physically examined Plaintiff, and reviewed Plaintiff's MRI from 2015. AR 568-69. Dr. Johnson concluded: "A surgical fusion would be the only option for chronic pain management that would have any effect on this type of disease process." AR 569. Dr. Johnson

ordered a new MRI of Plaintiff's spine, to determine if there was a new disc herniation that might account for Plaintiff's foot drop, but this did not undermine his conclusion regarding the fusion. Dr. Johnson also noted that based on Plaintiff's type of insurance and smoking status, his insurance would not cover the surgery. *Id.* This opinion conflicts with the ALJ's conclusion that pain medication and conservative care adequately manages Plaintiff's back pain. The ALJ therefore needed to "do more than offer his conclusions. He must [have] set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 (citing *Embrey*, 849 F.2d at 421-22).

By failing to discuss Dr. Johnson's medical opinion in any detail, the ALJ committed error. To the extent the ALJ opinion could be read as rejecting Dr. Johnson's opinion in favor of the agency reviewing doctors, it is still error. The state agency consultants never examined Plaintiff and their reviews of his medical records were signed and dated in September and November of 2015. AR 96-97, 122. When the state agency medical consultants reviewed Plaintiff's medical records, Plaintiff had yet to undergo his second back surgery and his back condition had not deteriorated further. Thus, the ALJ committed harmful error by implicitly rejecting Dr. Johnson's medical opinion and instead relying on the state agency medical consultants' outdated reviews of Plaintiff's medical records.

## C. The ALJ's RFC Formulation and Step Five Analysis

The RFC is the most a person can do, despite his physical or mental impairments. 20 C.F.R. §§ 404.1545, 416.945. In formulating an RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. *Id.*; SSR 96-8p, 1996 WL 374184. In determining a claimant's RFC, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional

limitations in the RFC. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Only

limitations supported by substantial evidence must be incorporated into the RFC and, by

extension, the dispositive hypothetical question posed to the VE. *Osenbrock*, 240 F.3d at 1163-

65.

Because the ALJ erred in considering Plaintiff's subjective symptom testimony and the

medical records and opinion of Dr. Johnson, the RFC is not based on a consideration of all of the

relevant evidence and must be reconsidered on remand. Consequently, the ALJ also erred in

relying on the VE testimony based on the RFC and resulting conclusion that there were

significant jobs in the economy that Plaintiff could perform. *See Flores v. Shalala*, 49 F.3d 562,

570 (9th Cir. 1995) (ruling that a hypothetical question posed to a vocational expert must

"include all of the [plaintiff's] functional limitations, both physical and mental"); *Matthews v.*

*Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) ("If a vocational expert's hypothetical does not reflect

all the [plaintiff's] limitations, then the . . . testimony has no evidentiary value . . . .").

**D.  Remand**

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to

remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation

omitted). Although a court should generally remand to the agency for additional investigation or

explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v.*

*Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the

utility of further proceedings. A court may not award benefits punitively and must conduct a

"credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine

if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec.*

*Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison*, 759 F.3d at 999. The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

Here, the ALJ did not provide sufficient reasons supported by substantial evidence in the record for discounting Plaintiff's back and leg pain subjective symptom testimony and ignoring Dr. Johnson's medical assessment of Plaintiff. The record is not, however, free from all conflicts and ambiguities. Thus, the matter is remanded for further proceedings.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is REVERSED AND REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 16th day of March, 2020.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge